CHARLES J. BROOKS, ADMINISTRATOR OF FRANK BROOKS, DECEASED, RESPONDENT, v. THE PENNSYLVANIA RAILROAD COMPANY, APPELLANT.

Submitted July 8, 1918—Decided November 18, 1918.

Evidence that people walked up and down, going from one place to another across railroad tracks in a city, across the ties; that there was no sidewalk across the railroad, no planking, no gates or fence, when accompanied by failure to produce evidence of a defined path, or a location of the lines of the alleged highway, is insufficient to justify submitting to a jury the question of the existence of a highway across the tracks by adverse user. *Drelich* v. *Erie Railway Co.*, 91 *N. J. L.* 600, distinguished.

On appeal from the Supreme Court.

For the respondent, *Warren Dixon.*

For the appellant, *William H. Carey.*

The opinion of the court was delivered by

SWAYZE, J. The decedent was killed while on the tracks of the railroad company. The issues in the case were: (1) was the decedent rightly there or was he a trespasser; (2) was the railroad company negligent; (3) was the decedent negligent? As the first question is decisive of the case, we do not think it necessary to deal with the others, and express no opinion as to them.

The answer to the first question depends upon whether the place of the accident was a highway crossing. Some attempt was made to establish a regularly dedicated or laid-out street, but the trial judge rightly disregarded this and left it to the jury to say whether a highway had been established by user. He told them they were to determine the question, "Has the plaintiff by a fair preponderance of the evidence satisfied you that this strip across the right of way of the Susquehanna Railroad Company was so notoriously, so continuously, so uninterruptedly, and it must be absolutely without interruption, for a period of twenty years, used by the public as a public highway adversely to the interests and title of the Susquehanna Railroad Company that it has become a public highway by user." He then quoted from the authorities and charged that, "to establish a highway by prescription the land in question must have been used by the public with the actual or implied knowledge of the landowner, adversely, under claim or color of right, and not merely by the owner's permission, and continuously and uninterruptedly for the period of twenty years;" that the user must be by the public generally as a way common to all; that a user by a few individuals as such is not generally sufficient; that occasional or desultory travel is not sufficient to

create a highway by prescription; that the user must have been continuous during the twenty years; that the road must have been used without interference or interruption by the owner of the soil; in other words, the owner must have acquiesced in the adverse user; that mere user of another's land by the public for a highway is insufficient of itself to establish a highway by prescription; that the user must be adverse and hostile to the rights of the owner and under color or claim of right to use the land; that a user by license or permission of the owner of the land sought to be impressed with the public easement of travel is not adverse and affords no basis for prescription where the landowner does not consent to the use of the land by the public as of right; that the user must be exclusive, that is, it must be such as to show a claim of right to use the land as a highway to the exclusion of any individual right of the owner inconsistent therewith; that the owner of the land must have knowledge of the adverse user, and if he has no actual knowledge, the user must be open and of such a character and the facts and circumstances must be such, as to put him on notice thereof and of the fact that a public right of travel is claimed.

These excerpts are enough to show that the trial judge was at some pains to state the abstract rules of law applicable to the establishment of a highway by adverse user. The difficulty we have is to find in the case proof of the concrete facts to which these legal principles are applicable. There is indeed, proof that people living in the neighborhood from time to time crossed the tracks somewhere in the neighborhood of Dey street. Perhaps there is enough to justify a jury in inferring that this use was uninterrupted and continuous as those words are used when applied to highways. The insuperable difficulty is the entire lack of evidence of adverse user for twenty years. The proof of adverse user must extend over the whole time, for the chain can be no stronger than its weakest link. Only one witness carries the user back twenty years, and if his evidence fails to show adverse user at that time, the plaintiff's case fails. The extent to which he goes is to say that he has known Dey street to

be used by people walking up and down or going from one place to another; he was made by his counsel to say that by that he meant that you would come down the street or go up the street and walk right across the railroad tracks you found there, of which there were four or perhaps six; that you would walk right across the ties and on across the other side; that there was no sidewalk across the railroad, and no planking there across the railroad and no gates or fence. That is the extent of his testimony. It goes no further than to show such crossing of a railroad track as is common. Probably as strong a case could be made to establish a highway by user at every rod of the railroad, certainly every rod in populous communities where the tracks are anywhere near grade. Such user, if known to the railroad company, is permissive, not under a claim of right, and, therefore, not adverse. It is most significant that there is not the slightest evidence of a defined path, as in *Drelich* v. *Erie Railway Co.*, 91 *N. J. L.* 600, such as would surely be caused by public use continuous and uninterrupted for twenty years. Nor is there any attempt to locate the lines of the highway across the railroad tracks. As far as the case shows, one man may have traveled one path, and one man another. The failure to define the way is fatal to the plaintiff's case.

"Relying for right of way on use, the right could not extend beyond the use. Or, as it has been expressed, 'if the right of the way depends solely upon user, then the width of the way and the extent of the servitude is measured by the character of the user; the easement cannot be broader than the user.'" *District of Columbia* v. *Robinson*, 180 *U. S.* 92, 100.

In that case the court sustained a charge that "the right to an easement of common and public highway acquired by a prescriptive use or long use of the road is confined to the lines and width of the road as actually used for and at the end of the period of twenty years, and does not extend to a greater width beyond the width of the road so actually used."

The evidence of the other witnesses as to adverse user is similar, but we need go no further since these witnesses testified to crossing within the twenty years only.  There was a complete failure to prove adverse user, and a verdict should have been directed for the defendant.

The judgment is reversed to the end that there may be a *venire de novo.*

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Swayze, Trenchard, Bergen, Minturn, Kalisch, Black, Heppenheimer, Williams, Taylor, Gardner, JJ. 12.